**Ann McLAUGHLIN, Secretary of Labor, United States Department of Labor, Plaintiff,**

**v.**

**LUNDE TRUCK SALES, INC., Lunde Leasing, Inc., Corporations, and Richard Lunde, an Individual, Defendants.**

No. 86 C 20318.

United States District Court, N.D. Illinois, W.D.

May 19, 1989.

See also, 714 F.Supp. 916.

Phyllis B. Dolinko, Office of the Sol., U.S. Dept. of Labor, Chicago, Ill., for plaintiff.

Roberta Holzwarth, Bradley Koch, Kim Casey, Holstrom & Green, James R. Pirages, Thomas & Hinshaw, Culbertson, Rockford, Ill., for defendants.

## ORDER

ROSZKOWSKI, District Judge.

This action comes before the court on the plaintiff's motion for summary judgment. For the reasons set forth below, the court finds the following:

(1) Lunde Truck Sales ("Sales") and Lunde Leasing ("Leasing"), together, are enterprises "engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA. (2) Richard Lunde ("Lunde") is an employer within the meaning of the FLSA of employees employed at the Leasing location. (3) Sales and Leasing are joint employers within the meaning of the FLSA of employees employed at the Leasing location. (4) The facilities of the corporate defendants Sales and Leasing constitute separate establishments within the meaning of 29 C.F.R. § 779.310. (5) The question of whether the defendants have violated Sections 6, 7, and 11 of the Act is expressly reserved. The court requires the parties and the plaintiff, in particular, to more fully address the question of the existence of violations in a supplemental brief.

## BACKGROUND

In September of 1986, pursuant to § 17 of the Fair Labor Standards Act [29 U.S.C. § 201 et seq.], hereinafter referred to as "FLSA" or "Act", the Secretary of Labor brought suit to enjoin and restrain the defendants from violating §§ 6, 7, 11, 15(a)(2) and 15(a)(5) of the Act. Specifically, the plaintiff charges that the defendants have repeatedly violated the provisions of § 6 of the Act by paying employee wages at rates less than $3.35 per hour. The plaintiff additionally charges the defendants with violating § 7 and § 15(a)(2) of the Act for failing to pay overtime wages to employees. The plaintiff also asserts that the defendants have failed to keep and preserve adequate and accurate records of employees and their wages and hours and other conditions and practices of employment. Finally, the plaintiff charges that the defendants, during the period since January 1, 1984, have repeatedly violated and are willfully violating the provisions of the Act; therefore, the defendants have become liable for an equal additional amount of liquidated damages pursuant to § 16(c) of the Act.

Presently, the plaintiff moves the court for summary judgment on these claims except those involving "willful" violations. The plaintiff has divided its motion into several distinct requests for judgment rul-

ings. The court shall address these requests individually and in the order presented.

## DISCUSSION

The Court will not grant any summary judgment motion unless all of the pleadings and supporting documents, if any, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986): *Fitzsimmons v. Best*, 528 F.2d 692, 694 (7th Cir.1976).

The initial burden is on the moving party to demonstrate that there is no genuine issue or question of material fact in dispute. *Rose v. Bridgeport Brass Company*, 487 F.2d 804, 808 (7th Cir.1973). Once the moving party has stated that a fact is not in question, the burden shifts to the non-moving party to demonstrate that there is some question of fact or to contradict the fact and bring it into question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

I.  Do Lunde Truck Sales and Lunde Leasing constitute an enterprise within Section 3(r) [§ 203(r)] and 3(s) [§ 203(s)] of the Fair Labor Standards Act?

The defendants concede that Lunde Truck Sales and Lunde Leasing, together, are an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA. (Memorandum in Opposition to Plaintiff's Amended Motion for Partial Summary Judgment).

II.  Is Richard Lunde an employer within the meaning of section 3(d) [§ 203(d)] of the FLSA of employees employed at the Leasing location?

The FLSA defines "employer", in pertinent part, as follows:

... any person acting directly or indirectly in the interest of an employer in relation to an employee ...

29 U.S.C. § 203(d). The plaintiff argues that Lunde meets the preceding definition based on his role as a corporate officer managing the day-to-day operations of the corporation. The defendants do not quibble with Lunde's role with the corporations; rather, they advocate the use of a narrow definition of "employer." Essentially, the defendants proffer a definition of "employer" that would include corporate officers only where in ordinary civil litigation similar circumstances would merit the piercing of the corporate veil. The defendants conclude such circumstances are not present in the instant case.

The court looks to past precedent for guidance in interpreting the FLSA's definition of "employer." In *Falk v. Brennan*, 414 U.S. 190, 195, 94 S.Ct. 427, 431, 38 L.Ed.2d 406 (1973), the Court acknowledged the expansive nature of "employer" in the scheme of the FLSA by finding the defendant rental management company an "employer" of maintenance workers employed at the property managed by the defendant. In *Karr v. Strong Detective Agency*, 787 F.2d 1205 (7th Cir.1986), the Seventh Circuit, in the context of a "joint employer" determination, stated the following:

Because we deal with a statutory construction of the FLSA, our determination of ... status is not limited by the previous common law notion of "joint employer", (citations omitted), and we need to give this concept an expansive interpretation in order to effectuate Congress's remedial intent in enacting the FLSA. (citations omitted).

*Karr*, 787 F.2d at 1207. Also in *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987), the Court commented as follows:

The word "employer" is defined broadly enough in the FLSA ... to permit naming another employee rather than the employer as defendant, provided the defendant had supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation.

Finally, Judge Shadur in *Gambino v. Index Sales Corp.*, 673 F.Supp. 1450, 1454

(N.D.Ill.1987), in the context of comparing the term "employer" under ERISA with the term "employer" under the FLSA, stated the following:

There is no doubt that if the question were whether Keenan is an "employer" within FLSA's essentially identical definition, and hence personally liable for unpaid overtime wages, the answer would be a resounding "yes." *Falk v. Brennan*, 414 U.S. 190, 195, 94 S.Ct. 427, 431, 38 L.Ed.2d 406 (1973) referred to and applied what it termed "the expansiveness of the Act's definition of 'employer.'" To be sure, the *Falk* context was substantially different from that of an individual acting for his own corporation cum-chief-executive-officer, cum-director or cum-sole-stockholder. But what is more significant is the *Falk* approach—the fact that the real estate management firm involved there was held a statutory "employer" of individuals who were concededly someone else's employees (the property owners'), and the fact that the Court did so because of the firm's "managerial responsibilities ... which gave it substantial control of the terms and conditions of the work of these employees" (*id.*). That reflected, in the Court's view, the proper scope to be given the statutory phrase "acting ... indirectly in the interest of an employer."

That same line of analysis has consistently been applied by lower courts (both before and after *Falk*) to bring individuals who control corporate operations into the FLSA "employer" category as to persons employed by their corporations. As *Donovan v. Agnew*, 712 F.2d [1509] at 1511 [1st Cir.1983] has accurately said: The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.

\*　　\*　　\*　　\*　　\*　　\*

This Court is of course aware of the basic insulation from personal liability normally afforded individuals when they do business in corporate form. But the uniform judicial reading of the FLSA definition of "employer" has been that such a broad-sweep definition was intended to strip away that insulation where the corporation-controlling individual has opted to prefer the payment of other corporate debts to the payment of obligations running to corporate employees and given special statutory recognition by Congress.

*Gambino*, 673 F.Supp. at 1454–55.

■ Based on the reasoning of these prior decisions, this court, too, will employ an expansive reading of "employer" and reject the "piercing the corporate veil" common law interpretation offered by the defendants. In short, an individual who controls corporate operations (and the terms and conditions of employees' employment therein) is an "employer" under the FLSA.

■ Based on the following undisputed facts, the court finds that Lunde is an "employer" under the FLSA. Lunde is the president of both corporate defendants and has acted and acts directly and indirectly in the interest of the corporate defendants in relation to the employees working at the sites of both corporate defendants. (Joint Statement of Undisputed Facts, at ¶ 6).

### III. Are Sales and Leasing joint employers of employees employed at the Leasing location?

The plaintiffs contend that defendants Sales and Leasing are "joint employers" for purposes of the FLSA. The defendants concede that Sales is an employer for purposes of ERISA. The defendants maintain, however, that Leasing may not be considered a joint employer of Sales's employees. Specifically, the defendants argue that all employees working at the Leasing location are employed by Sales in that these employees are on Sales's payroll. Furthermore, "Leasing has no independent payroll and all personnel records concerning employees working at the Leasing site are processed through and maintained by Truck Sales." (Joint Statement, ¶¶ 40–41).

The Seventh Circuit, in *Karr v. Strong Detective Agency, Inc., supra*, defined and

applied the term "joint employer" as follows:

Because we deal with a statutory construction of the FLSA, our determination of Strong and Roundy's status is not limited by the previous common law notion of "joint employer," (citations omitted) and we need to give this concept an expansive interpretation in order to effectuate Congress' remedial intent in enacting the FLSA. (citations omitted.) The main focus here is on the "economic reality" of the situation. (citation omitted).

Two or more employers may jointly employ someone for the purpose of the FLSA. (citation omitted). All joint employers are individually responsible for compliance with the FLSA. 29 C.F.R. § 791.2(a) (1984). (footnote omitted). Regulations issued by the Wage and Hour Administrator indicate that a joint employment relationship will be considered to exist in the following circumstances:

(1) When there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or

(2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or

(3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer. 29 C.F.R. § 791.2(b) (footnotes omitted).

*Karr*, 787 F.2d at 1207.

The *Karr* court's view does not share the defendants' view of the meaning of the term "joint employer." The Seventh Circuit and the regulations [29 C.F.R. § 791.2(a), (b) ] reject the defendants' suggestion that an employer is only the entity that pays the employee and keeps his or her payroll records. On the contrary, the

*Karr* court and the regulations mandate that facial indices of an employment relationship, such as payroll records, are not the only test of employment for purposes of the FLSA. Rather, the sharing of employees between employers, one employer acting in the interest of the other employer in relation to an employee, or sharing control of an employee by reason of the fact that one employer is under common control with the other employer, are all examples of where the "economic reality" of the circumstances dictates that a (joint) employment relationship exists. *See* 29 C.F.R. § 791.2(b).

Some of these circumstances exist in the instant case and also dictate a finding of joint employment. First, the undisputed facts show that the corporate defendants share employees through reassignment (Joint Statement, ¶¶ 17, 29). Second and most importantly, while all employees are technically Sales's employees, Sales has directed some of its employees to the Leasing location to perform nearly exclusive duties for Leasing. In sum, Leasing's entire operations would be all but non-existent without Sales's assignment of its payroll employees to the Leasing site to do Leasing's bidding. (Joint Statement, ¶¶ 17, 20, 21, 22, 29, 40, 41, 45, 54). Third and finally, both Leasing and Sales are under the common control of LTS, Inc. holding company, which in turn is controlled by Lunde, himself. In more concrete terms, the Sales employees at the Leasing site are the "leasing" part of an integrated truck sales, leasing and repairing operation under the direction of one common owner. As part of this integrated operation, Leasing is not only "associated" with the employees at the leasing site; Leasing directly controls these employees to fulfill its part of the total operation.

■ In sum, the economic reality of the instant case is that Leasing exercises control over the employees at its site. This fact is not controverted and is not diminished nor negated by the fact that Leasing does not maintain records for or pay the employees at the Leasing site. (Joint Statement, ¶¶ 5, 6, 7, 9, 10, 11, 12, 13, 14,

15, 16, 17, 18, 19, 23, 29, 53, 54, 55). Accordingly, the court finds that Leasing and Sales are joint employers for purposes of the FLSA.

### IV. Do the facilities of corporate defendants Sales and Leasing constitute separate establishments within the meaning of 29 C.F.R. § 779.310 (1988)?

The plaintiff contends that the corporate defendants' respective locations are separate "establishments" for purposes of FLSA liability. The defendants retort that it is illogical to suppose that the fully integrated operation composed of the corporate defendants can be dissected into two "establishments" based merely on distinct physical locations.

Section 779.303 provides as follows:

As previously stated in § 779.23, the term "establishment" as used in the Act means a distinct physical place of business. The "enterprise," by reason of the definition contained in section 3(r) of the Act and the tests enumerated in section 3(s) of the Act, may be composed of a single establishment. The term "establishment," however, is not synonymous with the words "business" or "enterprise" when those terms are used to describe multiunit operations. In such a multiunit operation some of the establishments may qualify for exemption, others may not. For example, a manufacturer may operate a plant for production of its goods, a separate warehouse for storage and distribution, and several stores from which its products are sold. Each such physically separate place of business is a separate establishment. In the case of chain store systems, branch stores, groups of independent stores organized to carry on business in a manner similar to chain store systems, and retail outlets operated by manufacturing or distributing concerns, each separate place of business ordinarily is a separate establishment.

Section 779.23 provides in pertinent part as follows:

The term "establishment" means a "distinct physical place of business" rather than "an entire business or enterprise." (See § 779.23.) The term "enterprise" was not used in the Act prior to the 1961 amendments, but the careful definition and the legislative history of the 1961 and 1966 amendments provide guidance as to its meaning and application. As defined in the Act, the term "enterprise" is roughly descriptive of a business rather than of an establishment or of an employer although on occasion the three may coincide. The enterprise may consist of a single establishment (see § 779.204(a)) which may be operated by one or more employers; or it may be composed of a number of establishments which may be operated by one or more employers (see § 779.204(b)).

The regulations defining "establishment" mirror earlier court opinions. *See Gilreath v. Daniel Funeral Home, Inc.*, 421 F.2d 504, 508 (8th Cir.1970), *citing A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 496, 65 S.Ct. 807, 810, 89 L.Ed. 1095 (1945); *Acme Car & Truck Rentals v. Hooper*, 331 F.2d 442 (5th Cir.1964); *Mitchell v. Birkett*, 286 F.2d 474 (8th Cir.1961); *Mitchell v. Gammill*, 245 F.2d 207 (5th Cir.1957); *McComb v. Wyandotte Furniture Co.*, 169 F.2d 766 (8th Cir.1948). An "establishment", distinct from a business or enterprise, is a distinct physical place of business. All that is required to create a separate establishment is a distinct physical place of business. It is undisputed that the corporate defendants operate out of two distinct physical locations or places of business. (Joint Statement, ¶¶ 1, 2, 25, 39). The defendants' argument that separate "establishments" is inconsistent with a finding of single "enterprise" is misplaced. The regulations simply distinguish the two terms and explicitly explain that a single "enterprise" may contain more than one "establishment." *See* 29 C.F.R. 779.203 ["The enterprise may consist of a single establishment (*see* § 779.204(c)) ... or it may be composed of a number of establishments...."].

Finally, the defendants cite to several cases which appear to support the notion that physical location is only one of several factors to consider in determining separate

"establishments." *See Marshall v. Sundial Associates, Ltd.,* 588 F.2d 120, 123 (5th Cir.1979); *Marshall v. New Hampshire Jockey Club,* 562 F.2d 1323, 1330–31 (1st Cir.1977); *Wirtz v. Wolfe,* 57 Lab.Cas. CCH P. 31, 993 (M.D.Fla.1967); *Acme Car & Truck Rentals, Inc. v. Hooper,* 331 F.2d 442, 444 (5th Cir.1964).

Indeed, these decisions do support such an assertion. These cases, however, are inapplicable to the instant case because the cited cases involve the determination of "[s]eparate establishments on the same premises." Physical separation is only one factor, in these cases, in determining the existence of separate "establishments." The corporate defendants, in the instant case, however, do not share the same premises. Accordingly, the court finds that Sales and Leasing's facilities are distinct physical places of business and therefore are separate "establishments" for purposes of FLSA liability.

V. Have the defendants violated Section 6, 7, and 11 of the Act, and if so, should they be enjoined under § 17 of the FLSA?

The plaintiffs move the court to restrain the defendants from continued violations of the FLSA and to enjoin the withholding of back wages. In support of this motion, the plaintiff cites the following uncontested facts as proof of violations of sections 6, 7 and 11 of the FLSA:

> Employee Steven Bennett II was paid at rates from $2.50 to $3.00 per hour for the period from January through July 1984.

> Defendants failed to pay employee Kathleen Combs at a rate of not less than one and one-half times her regular rate of pay for hours worked in excess of 40 in any workweek.

> Defendants failed to maintain adequate and accurate records of the hours worked by employee Kathleen Combs. (¶¶ 30, 31, 65).

The defendants counter that these uncontested facts are not admissions that a practice is violative of the FLSA. Thus, the defendants conclude substantial factual issues exist. The defendants do not specify any further on the nature of the factual questions. Presumably, based on the context of the discussion, the defendants assert that further facts must be determined before the defendants' practices referred to in their "Joint Statement of Uncontested Facts" can be found violative of FLSA.

The court does not share the defendants' view. What needs to be determined is a question of law (whether the FLSA has been violated) based on the uncontested facts (the defendants' various employee practices). Perhaps the defendants are troubled by the fact that the plaintiff, in its motion for summary judgment and supporting memorandum, has completely failed to set out how the defendants' practices invoke section 6, 7 and 11 of the FLSA. The plaintiff only recaps the relevant undisputed facts and summarily states: "These undisputed facts show that the defendants have violated 6, 7, and 11 of the Act." The plaintiff ostensibly treats the existence of violations as a foregone conclusion and focuses most of its attention on the granting of an injunction under § 17. Apparently, the defendants leave to the court the entire task of assigning specific facts to the pertinent law. Consequently, the court is not certain that the plaintiff is entitled to judgment on this issue, as a matter of law, as the legal questions were not completely briefed.

Accordingly, the court requires the parties and the plaintiff, in particular, to more fully address the question of the existence of violations in a supplemental brief.[1] The defendants, of course, may respond. Consequently, the issue of violations and enjoinment has been reserved.

As to the issue of willfulness and liquidated damages, the plaintiff has voluntarily withdrawn, at this time, a request for summary judgment on these issues.

---

1. The court suggests the plaintiff's brief be in a format of proposed findings of fact and conclu-sions of law. See Minute Order for briefing schedule.