NANCY P. ANDREWS *et al.*, Plaintiffs-Appellees, v. KOWA PRINTING CORPORATION *et al.*, Defendants-Appellants.

Fourth District    No. 4—03—0885

Argued May 11, 2004.—Opinion filed August 4, 2004.

John F. Martin, of Meachum & Martin, of Danville, for appellants.

Thomas B. Meyer and Steven L. Blakely, both of Acton & Snyder, L.L.P., for appellees.

JUSTICE APPLETON delivered the opinion of the court:

Defendants, Kowa Printing Corporation (Kowa Printing), Thomas W. Kowa, and Huston-Patterson Corporation (Huston-Patterson), appeal the trial court's judgment awarding plaintiffs vacation and severance pay. Plaintiffs are former union employees of Kowa Printing. Defendants argue plaintiffs' claims are preempted by federal law due to the existence of a collective-bargaining agreement and that the provisions of federal law require the employees to exhaust all grievance procedures before filing suit. In the alternative, defendants Kowa and Huston-Patterson claim they are not "employers" within the meaning of the Illinois Wage Payment and Collection Act (Wage Act) (820 ILCS 115/1 through 15 (West 2000)). Kowa Printing claims it did not wilfully violate the Wage Act, and all defendants claim the trial court erred in awarding plaintiffs prejudgment interest and attorney fees. We affirm in part and reverse in part.

## I. BACKGROUND

Robert Kowa owned and operated Huston-Patterson in Decatur, Illinois, and Kowa Printing in Danville, Illinois. Upon Robert Kowa's death in November 1991, his son, Thomas Kowa, purchased 100% of the shares of Kowa Printing and 97% of the shares of Huston-Patterson (the remaining 3% are owned by Kowa's brother, Steve, who is not individually involved in this appeal).

Since his purchases of the businesses, Kowa has been the sole officer and director of both Kowa Printing and Huston-Patterson. Kowa also owned 100% of the shares of Sygma Graphics Corporation (Sygma Graphics) in Ottawa, Illinois, and Kowa Graphics, Inc., in Champaign, Illinois. In February 1996, Kowa merged Kowa Graphics, Inc., and Kowa Printing and operated the merged companies out of Kowa Printing's facility in Danville. Kowa Printing, Huston-Patterson, and Sygma Graphics, all printing companies, were known under the servicemark The Kowa Group.

The three companies were distinct, separate entities, yet were intertwined for business purposes. For example, sales representatives for each company would market all three companies within The Kowa Group depending on the type of job desired by the customer. Each company performed different printing services.

Huston-Patterson provided management services, including payroll and accounting services, to Kowa Printing and Sygma Graphics under a written management-services agreement. According to

Kowa, Huston-Patterson was also considered one of Kowa Printing's biggest customers.

Plaintiffs were all employees of Kowa Printing and were members of one of two union groups, Graphic Communications International Union Local No. 257-C (Local 257-C) and Graphic Communications International Union Local No. 171-B (Local 171-B). Each union had a collective-bargaining agreement with Kowa Printing.

In 1996, it was discovered that Kowa Printing's bookkeeper, an employee of Huston-Patterson, had embezzled over $500,000 from Kowa Printing since 1991. After several months of analyzing the status of the corporation, Kowa discovered that Kowa Printing was in dire financial straits. The company's 1996 tax return showed a loss of $2,267,072.

Kowa Printing's only secured creditor was BankIllinois. As of June 1997, Kowa Printing was in default on the bank's loans, but the bank had agreed in writing to temporarily delay foreclosure. Kowa located a buyer for Kowa Printing. He and the prospective buyer reached an agreement with regard to the sale. Kowa presented a proposal to the two employees' unions involved, but they rejected both that proposal and several modified proposals. Thereafter, the sale fell through.

BankIllinois foreclosed on the loans and seized all of the assets of Kowa Printing on April 16, 1998. Bank representatives arrived at Kowa Printing escorted by officers of the Danville police department, took possession of the facility, and sent the employees home. The closing did not directly affect the operation of Huston-Patterson or Sygma Graphics.

On December 30, 1998, the Illinois Department of Labor (Department), on behalf of plaintiffs, found Kowa Printing, Kowa, and Huston-Patterson liable for $5,274.70 unpaid wages. According to the Department, it had no jurisdiction to evaluate the employees' claims for vacation or severance pay because entitlement to those amounts was covered by the collective-bargaining agreements and thus fell within the jurisdiction of the federal court system pursuant to section 301 of the Labor Management Relations Act (LMRA) (29 U.S.C. § 185 (1994)), also known as the Taft-Hartley Act.

On January 23, 2000, plaintiffs, 35 former employees of Kowa Printing, filed a complaint, alleging they were due unpaid vacation and severance pay under their respective collective-bargaining agreements.

On February 25, 2000, defendants filed a notice that they were removing the lawsuit to federal court, claiming plaintiffs' complaint was governed by the LMRA and was thus under the jurisdiction of the

United States District Court. On August 9, 2000, the federal court remanded the suit to state court, finding the LMRA did not preempt plaintiffs' claims.

In March 2002, the parties filed cross-motions for summary judgment. Both were denied. The trial court conducted a bench trial on April 29, 2002. Because we summarize the facts and other evidence throughout this decision, a detailed summary of the evidence presented at trial is not necessary. However, it is important to note that at the trial, the parties presented the court with a stipulation of the amounts due each plaintiff.

Approximately one year after the trial, on April 21, 2003, the court entered its decision, finding defendants Kowa and Huston-Patterson "employers" within the meaning of the Wage Act and liable, along with Kowa Printing, to all plaintiffs for the amounts stipulated.

On April 30, 2003, plaintiffs moved for an award of attorney fees and prejudgment interest. On September 29, 2003, the trial court entered the final judgment, incorporating its findings from its April 21, 2003, decision and adding prejudgment interest from April 21, 2003, to September 29, 2003. The judgment also awarded plaintiffs David L. Kelley and Bruce M. Overstreet $28,289.53 in attorney fees pursuant to section 1 of the Attorneys Fees in Wage Actions Act (Attorney Fees Act) (705 ILCS 225/1 (West 2000)) because the judgment amount awarded to those plaintiffs exceeded their presuit demand. This appeal followed.

## II. ANALYSIS

### A. Standard of Review

Because we decide questions of law—whether the state court had subject-matter jurisdiction, whether defendants were "employers" within the meaning of the Wage Act, whether defendants wilfully violated the Wage Act, and whether the awards of prejudgment interest and attorney fees were proper—our review is *de novo*. *Metzger v. DaRosa*, 209 Ill. 2d 30, 34, 805 N.E.2d 1165, 1167 (2004).

### B. Preemption by Federal Law

Defendants appeal the trial court's judgment, arguing that it erred in applying the Wage Act and by not finding that the LMRA preempted plaintiffs' suit. Defendants rely on *National Metalcrafters v. McNeil*, 784 F.2d 817 (7th Cir. 1986), for their argument that the existence of the collective-bargaining agreements between plaintiffs and their employer placed disputes between the two within the purview of the LMRA, not state law.

Plaintiffs, on the other hand, rely, *inter alia*, on *Livadas v. Brad-*

*shaw*, 512 U.S. 107, 123, 129 L. Ed. 2d 93, 110, 114 S. Ct. 2068, 2078 (1994), *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 409-10, 100 L. Ed. 2d 410, 421, 108 S. Ct. 1877, 1883 (1988), and *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 85 L. Ed. 2d 206, 215, 105 S. Ct. 1904, 1911 (1985), which held an employee's claim is not always preempted by federal law when there is a collective-bargaining agreement. Each case held that federal preemption occurs only when the terms of the collective-bargaining agreements are at issue and must be interpreted. *Livadas*, 512 U.S. at 125, 129 L. Ed. 2d at 110, 114 S. Ct. at 2079; *Lingle*, 486 U.S. at 411, 100 L. Ed. 2d at 423, 108 S. Ct. at 1884; *Lueck*, 471 U.S. at 218-19, 85 L. Ed. 2d at 220, 105 S. Ct. at 1915. Plaintiffs maintain that defendants' liability is a statutory question rather than a matter of contract interpretation.

■ Plaintiffs' claim was brought pursuant to section 5 of the Wage Act (820 ILCS 115/5 (West 2000)), which provides that "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday." "Final compensation" is defined as "wages, salaries, *** and the monetary equivalent of earned vacation *** and any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the [two] parties." 820 ILCS 115/2 (West 2000).

We agree with plaintiffs and hold that under the specific facts of this case, their claim under the Wage Act was a proper vehicle for their requested relief and federal preemption was not required. Accordingly, we find the trial court had subject-matter jurisdiction over plaintiffs' claims.

*National Metalcrafters, Livadas, Lueck,* and *Lingle* make it clear that preemption occurs when an interpretation of the collective-bargaining agreement is necessary. *National Metalcrafters*, 784 F.2d at 824; *Livadas*, 512 U.S. at 125, 129 L. Ed. 2d at 110, 114 S. Ct. at 2079; *Lingle*, 486 U.S. at 411, 100 L. Ed. 2d at 423, 108 S. Ct. at 1884; *Lueck*, 471 U.S. at 218-19, 85 L. Ed. 2d at 220, 105 S. Ct. at 1915. The parties must engage in a good-faith dispute or debate over the meaning of terms within the contract in order for preemption to be triggered. The mere existence of a contract is not enough for preemption. Indeed, the *National Metalcrafters* court stated:

> "Section 301 expresses a strongly held policy in favor of applying uniform federal principles to the *interpretation of* collective[-] bargaining contracts. This policy reflects the national commitment to limiting state regulation of labor relations that grows out of the history of hostility in some states to the labor movement." (Emphasis added.) *National Metalcrafters*, 784 F.2d at 825-26.

As we have stated, plaintiffs are members of two unions. Entitlement to vacation and severance pay is set forth in the provisions of the respective collective-bargaining agreements. The following is language from Local 257-C's collective-bargaining agreement relating to severance pay:

> "25.01. The employer agrees that in the event of the closing of the plant due to a consolidation or liquidation, two weeks severance pay consisting of 75 hours pay at the employee's straight time hourly rate of pay will be given to all employees who have been employed for more than a year and who lost their jobs due to such closing."

It is agreed among the parties that Local 171-B's agreement does not contemplate severance pay for the employees under the situation at issue. Both agreements set forth the number of vacation days to which each employee is entitled based upon his or her length of service.

Because plaintiffs' entitlement to vacation and/or severance pay stems from the collective-bargaining agreements, it would be necessary, in most circumstances, to look to the respective agreements and interpret the meaning of the terms stated therein. The success of plaintiffs' claims for pay would depend entirely on the terms of the agreements, not on state law. A contested issue as to whether each plaintiff was entitled to pay and, if so, how much would require a court to look to the provisions in the agreements, evaluate the employee status of each plaintiff, and calculate the amount due according to the terms in the agreements. Congress has mandated that federal law governs such situations in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes. *Lingle*, 486 U.S. at 404, 100 L. Ed. 2d at 417, 108 S. Ct. at 1880.

Typically, plaintiffs' state-law claims, such as those presented here, would be preempted by federal law because their claims depend entirely upon interpretation of the agreements. Entitlement to the pay requested is governed by the agreements, not state law, prompting the notion of section 301 preemption, which follows the principle developed in *Local 174 v. Lucas Flour Co.*, 369 U.S. 95, 7 L. Ed. 2d 593, 82 S. Ct. 571 (1962):

> "[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are [s]tates) is pre[ ]empted and federal labor-law principles—necessarily uniform throughout the [n]ation—must be employed to resolve the dispute." *Lingle*, 486 U.S. at 405-06, 100 L. Ed. 2d at 418-19, 108 S. Ct. at 1881.

*National Metalcrafters, Livadas, Lueck,* and *Lingle* consistently follow the same analysis in determining whether the plaintiff's claim was preempted by federal law: Does the claim require a court to interpret any term of a collective-bargaining agreement? Even though plaintiffs' claims, which were based upon the collective-bargaining agreements, would normally require interpretation, such is not the case here.

On the facts of the case before us, we find there is no need to invoke the national uniform policy of the LMRA for the trial court did not interpret, nor do we, plaintiffs' collective-bargaining agreements. The parties presented the court with a stipulation that had already interpreted the agreements. Because of the stipulation, plaintiffs' claims do not require a court to construe the various provisions of the collective-bargaining agreements.

Had there been no stipulation, interpretation would have been necessary. The court would have had to refer to the agreements to determine the validity of each plaintiff's claim and, if valid, how much each plaintiff was due. With the stipulation, however, the court need not engage in that analysis. The court had before it the agreed amount due each plaintiff.

The stipulation presented to the trial court did not contain any reservations or limitations on defendants' part as to liability. The body of the stipulation read, in its entirety, as follows:

> "Plaintiffs, by counsel, *** and defendants, by counsel, *** hereby stipulate to the [c]ourt that plaintiffs were not paid severance pay and vacation pay, or its monetary equivalent[,] and that the amounts owed to each of the individual plaintiffs are recited in Exhibits 1 and 2, which are attached hereto."

The stipulation was signed by the parties' respective counsel and had attached a list of plaintiffs' names with the corresponding amounts due. We note the stipulation was signed only by Kowa Printing's counsel and was not entered into by Kowa or Huston-Patterson. On its face, the stipulation sets forth (1) that plaintiffs were each owed severance and/or vacation pay, and (2) the amounts due each plaintiff. The trial court entered judgment in favor of plaintiffs, incorporating the stipulation presented. Both entitlement and the amounts due were nonissues; and therefore, no analysis or interpretation of the agreements was required.

■ As a result, plaintiffs were merely seeking payment of "wages" due and owing, a request that falls squarely within the Wage Act. The purpose of the Wage Act is to provide employees with a cause of action for the timely and complete payment of earned wages or final compensation. *Miller v. J.M. Jones Co.,* 198 Ill. App. 3d 151, 152, 555

N.E.2d 820, 821 (1990) (Fourth District). We find the duty to pay plaintiffs' final compensation on the date of separation was a matter of state law rather than of contract interpretation when there was no dispute about the amounts due. We affirm the trial court's decision that plaintiffs' claims were based on a violation of section 5 of the Wage Act and were not preempted by the LMRA.

Because we find plaintiffs' claims were not preempted by federal law, defendants' argument that plaintiffs failed to exhaust all grievance procedures is moot and need not be addressed. See *Nagel v. Gerald Dennen & Co.*, 272 Ill. App. 3d 516, 524, 650 N.E.2d 547, 553 (1995) (exhaustion of nonjudicial remedies is not required prior to filing suit).

## C. Application of the Wage Act

Defendants next contend plaintiffs failed to prove entitlement to a claim under the Wage Act because there was no evidence that (1) Kowa Printing wilfully violated the Wage Act and (2) Kowa and Huston-Patterson were "employers" within the meaning of the Wage Act.

■ Section 5 of the Wage Act does not require that plaintiffs prove that the employer wilfully failed to pay the final compensation. It is enough, according to the statute, that plaintiffs were simply not paid by the next regularly scheduled payday after separation. See 820 ILCS 115/5 (West 2000). Kowa Printing acknowledges that plaintiffs were not paid; however, it argues that it was unable to pay the amounts due because the bank seized the business and all of its assets. That unfortunate situation does not relieve the employer, Kowa Printing, of its responsibility to pay its employees their final compensation due. As a practical matter, BankIllinois, as creditor, seized Kowa Printing's business and assets. Nonetheless, we affirm the trial court's judgment finding defendant Kowa Printing liable to plaintiffs for vacation and severance pay due.

Next, we decide whether Kowa, individually, and Huston-Patterson are liable as employers within the meaning of the Wage Act. Section 2 of the Wage Act defines an "employer" as "any individual, partnership, association, corporation, business trust, *** or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee, for which one or more persons is gainfully employed." 820 ILCS 115/2 (West 2000).

### 1. *Kowa's Liability*

Defendants contend that to include Kowa as an "employer" within the meaning of the Wage Act, the court would have to pierce the corporate veil of Kowa Printing. On the other hand, plaintiffs contend

Kowa meets the definition of "employer" based on his role as the sole shareholder, officer, and director of Kowa Printing. Kowa, plaintiffs argue, had operational control over Kowa Printing and acted directly and indirectly in the interest of Kowa Printing in relation to the employees.

In *McLaughlin v. Lunde Truck Sales, Inc.*, 714 F. Supp. 920, 923 (N.D. Ill. 1989), the court held the officer of a corporation was an "employer" within the meaning of the Fair Labor Standards Act of 1938 (FLSA) (29 U.S.C. §§ 201 through 219 (1988)). There, the Secretary of Labor brought suit against the employer defendants for various violations of the FLSA. In determining whether the individual corporate officer, Richard Lunde, was liable for the violations, the court looked to the FLSA's definitions, which provided that an "employer" was "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d) (1988).

Because the FLSA's definition of "employer" and the Wage Act's definition of "employer" are identical, we find *McLaughlin* provides some guidance to the issues before us. In *McLaughlin*, the court dispensed with the defendants' argument that piercing the corporate veil was necessary to hold the officer individually liable as an employer. In so doing, the court, quoting *Gambino v. Index Sales Corp.*, 673 F. Supp. 1450, 1455 (N.D. Ill. 1987), said:

> "[']The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.
>
> * * *
>
> This [c]ourt is of course aware of the basic insulation from personal liability normally afforded individuals when they do business in corporate form. But the uniform judicial reading of the FLSA definition of 'employer' has been that such a broad-sweep definition was intended to strip away that insulation where the corporation-controlling individual has opted to prefer the payment of other corporate debts to the payment of obligations running to corporate employees and given special statutory recognition by Congress.[']" *McLaughlin*, 714 F. Supp. at 923.

Applying this analysis, the court employed an expansive reading of "employer," rejected the piercing-the-corporate-veil, common-law interpretation offered by the defendants, and held that an individual who controls corporate operations (and the terms and conditions of employees' employment therein) is an "employer" under the FLSA. *McLaughlin*, 714 F. Supp. at 923.

Likewise, in *Donovan v. Agnew*, 712 F.2d 1509, 1514 (1st Cir. 1983), David Agnew, the individual officer, was held to be an employer within the meaning of the FLSA and was liable to the employees for the company's failure to pay overtime and minimum wage for three weeks. In *Gambino*, 673 F. Supp. at 1456, Donald Keenan, the president, director, and sole shareholder of the corporation employer was individually liable for the company's failure to make timely contributions to the employees' pension trust for over two years.

We find significant a major distinction between the facts of *McLaughlin*, *Donovan*, and *Gambino* and the facts before us. In *McLaughlin*, *Donovan*, and *Gambino*, the corporate officer knew, or should have known by the nature of his involvement with the company, that the company was not paying the employees as it should, yet he allowed the practice to continue. He was aware of the company's violations and arguably made the conscious decision to not comply with the FLSA. Here, we have a completely different situation. Kowa Printing paid its employees until the bank took control of the business. The evidence did not indicate that Kowa knew of the bank's plan to seize the company that day and terminate the employees. Kowa most likely knew the situation was inevitable, but he did not opt to pay others in lieu of paying plaintiffs. They were paid through their last pay period before being asked to leave.

Plaintiffs cite no authority factually similar to the case *sub judice*, which holds a corporate officer individually liable without the requisite *scienter* implicated in sections 13 (officer or agent of corporation is deemed to be an employer if he or she *knowingly* permits employer to violate the Wage Act) and 14(a) (employer or agent of employer is guilty of misdemeanor if he is able yet wilfully fails to pay employee) of the Wage Act. 820 ILCS 115/13, 14(a) (West 2000). The parties have not cited, nor has our own research disclosed, any case holding an "innocent" corporate officer individually liable under section 5 of the Wage Act.

Due to the lack of authority in Illinois, we have looked to decisions of other states and found a Colorado case of particular interest. In *Leonard v. McMorris*, 63 P.3d 323 (Colo. 2003), the Colorado Supreme Court held the corporation's officers were not individually liable for unpaid wages to the employees under Colorado's Wage Claim Act (Act) (Colo. Rev. Stat. §§ 8—4—101 through 8—4—127 (2002)). The court held the Act's definition of "employer" was ambiguous on the question of an officer's personal liability.

In *Leonard*, the employer, NationsWay, a trucking firm, filed for bankruptcy protection under chapter 11 (11 U.S.C. § 1101 *et seq.* (2000)). Upon the filing of the petition, NationsWay terminated several

employees and did not pay wages and other compensation that became due thereafter because the Bankruptcy Code's automatic stay provision prevented the corporation from making the payments. *Leonard*, 63 P.3d at 325. Leonard claimed the officers of NationsWay were personally liable for the unpaid wages. The federal court found the officers individually liable. The officers appealed to the United States Court of Appeals for the Tenth Circuit, which certified questions of Colorado law to the Colorado Supreme Court due to the lack of controlling precedent. The Colorado Supreme Court looked to the Act to ascertain the legislative intent. *Leonard*, 63 P.3d at 326.

In Colorado's Act, the definition of "employer" included "every person, firm, partnership, association, corporation, \*\*\* and any agent or officer thereof, of the above mentioned classes, employing any person in Colorado." Colo. Rev. Stat. § 8—4—101(6) (2002). Comparing section 13 of our Wage Act and the relevant section of Kansas's statute, the court found that Colorado's definition did not include "any words stating that officers and agents of a corporation are individually liable for wage and compensation payment due under the employment contract." *Leonard*, 63 P.3d at 327. The court noted that Illinois's Wage Act demonstrated how a legislature may choose to pierce the corporate veil and make some officers and agents personally liable *in particular circumstances* for payment of unpaid wages. *Leonard*, 63 P.3d at 327. Due to the absence of such language in Colorado's Act and due to the general principles of corporate law that provide personal immunity to corporate officers and agents, the court refused to read into the statute the ability to hold an officer or agent individually liable. *Leonard*, 63 P.3d at 327.

The court then looked to the legislature's intent on the question of joint and several officer liability and concluded that the legislature did not intend to impose personal liability on officers and agents that is equal to the corporation's liability. *Leonard*, 63 P.3d at 328. This conclusion was based upon the language actually utilized in the statute and the principles set forth in Colorado's long-standing corporate law, which, the court found, the legislature did not intend to supersede. *Leonard*, 63 P.3d at 328.

The court found that Colorado's Act, unlike those of Illinois and Kansas, did not contain words making officers and agents personally liable for wage payment. *Leonard*, 63 P.3d at 330. Citing many cases that reiterate the inherent purpose of incorporation with respect to insulating an officer from personal liability, the court held the legislature intended the principles of corporate law to function in the context of the Act, not to displace them without specifically saying so. *Leonard*, 63 P.3d at 332. The court stated:

"Personal liability of officers for wages in the event of business insolvency would be a sharp departure from corporate law principles, and we would expect the General Assembly to state such intent specifically or by necessary implication. No such language or evident intent appears in Colorado's Wage Claim Act." *Leonard*, 63 P.3d at 332.

We borrow from the Colorado Supreme Court's analysis and hold that if the legislature intended for corporate officers or agents to be personally liable in *all* situations where that officer or agent exercises operational control over the corporation and its employees, it would have so stated and it would not have limited that personal liability to situations where a plaintiff must prove the officer or agent knowingly or wilfully aided the corporation in a violation of the Wage Act, the situation that is specifically set forth in sections 13 and 14(a). See 820 ILCS 115/13, 14(a) (West 2000).

▪ We hold individual officers or agents of a corporation are not "employers" within the meaning of section 5 of the Wage Act without first implicating the officers' personal liability under section 13 or 14(a). Because there was no evidence that Kowa knowingly or wilfully aided or allowed Kowa Printing to violate provisions of the Wage Act by not paying the vacation or severance pay due, we find he is not personally liable for the compensation due plaintiffs upon BankIllinois's takeover of the business. We reverse the trial court's judgment finding Kowa individually liable to plaintiffs.

### 2. *Huston-Patterson's Liability*

Defendants argue that Huston-Patterson is a completely separate entity from Kowa Printing and is not deemed plaintiffs' "employer" within the meaning of the Wage Act. Plaintiffs claim that because Huston-Patterson and Kowa Printing did business under the same servicemark, The Kowa Group, and because Huston-Patterson performed all of the administrative duties, including payroll for Kowa Printing, it meets the definition of "employer" and is liable to plaintiffs for unpaid compensation.

Although the decision was made in the context of the FLSA, *McLaughlin* is instructive on this issue. In *McLaughlin*, the plaintiffs claimed two separate corporations were joint employers and thus responsible for the FLSA violations. *McLaughlin*, 714 F. Supp. at 923. The two corporations, Lunde Truck Sales (Sales) and Lunde Leasing (Leasing), shared employees in that all employees were technically employed by Sales, but some were directed to work at Leasing's facility and performed duties at Leasing's directions. Sales and Leasing were under the common control of LTS, Inc., a holding company, which was in turn controlled by Lunde, the corporate officer and manager of

day-to-day operations of all corporations. *McLaughlin*, 714 F. Supp. at 924.

■ In determining whether Sales and Leasing were joint employers, the court referred to the Seventh Circuit's decision in *Karr v. Strong Detective Agency, Inc.*, 787 F.2d 1205 (7th Cir. 1986). The *Karr* court held that in order to determine whether companies were joint employers, it must focus on the "economic reality" of the situation and consider the following factors issued by the Wage and Hour Administrator (29 C.F.R. § 791.2(a) (1989)) in evaluating the existence of a joint employment relationship:

> " '(1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or
>
> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.' " *McLaughlin*, 714 F. Supp. at 924, quoting *Karr*, 787 F.2d at 1207.

In *McLaughlin*, the court held that the economic reality of the case was that Leasing exercised control over the employees at its site, even though those employees were technically employed by Sales, and thus were joint employers, both liable to plaintiffs. *McLaughlin*, 714 F. Supp. at 924-25.

Following the reasoning in *McLaughlin*, we consider the "economic reality" of the relationship between Huston-Patterson and Kowa Printing. Huston-Patterson and Kowa Printing were separate corporate entities doing business out of separate facilities in different cities. However, Kowa Printing hired Huston-Patterson to exclusively perform its administrative duties, including payroll and bookkeeping. Each corporation had separate employees, even though, due to the management agreement, some Huston-Patterson employees worked out of the Kowa Printing facility. No evidence was presented that the Huston-Patterson employees who worked out of the Kowa Printing facility had any control over Kowa Printing employees. The Huston-Patterson employees were merely performing a service for Kowa Printing and had no authority over Kowa Printing's day-to-day operations or its employees.

■ Based on the facts before us, we find that merely hiring a firm to perform a service for an employer for remuneration does not make

that hired firm an "employer" to the employees of the hiring company. We find Huston-Patterson, despite being registered under the same servicemark as Kowa Printing and despite being owned and operated by the same individual, is a completely separate corporation with its own employees, duties, and records. It is not an "employer" within the meaning of the Wage Act with respect to plaintiffs and, therefore, is not liable for plaintiffs' unpaid compensation. We reverse the trial court's judgment finding Huston-Patterson liable for the unpaid compensation of Kowa Printing's employees.

### D. Award of Prejudgment Interest

■ Defendants claim the trial court erred in awarding 5% interest from April 21, 2003, the date of the trial court's written decision, through September 29, 2003, the date of entry of the judgment. Defendants claim the court was without authority to award the interest under section 2 of the Illinois Interest Act (815 ILCS 205/2 (West 2000)) because defendants' failure to pay plaintiffs immediately upon the trial court's decision did not constitute an "unreasonable and vexatious delay in payment."

Plaintiffs argue that the trial court was correct in awarding interest because as of the date of the court's decision and despite the fact the final judgment was not entered until September 29, 2003, the issues of liability and the amounts due had been determined, and defendants' failure to pay thereafter was "unreasonable and vexatious."

We find authority for the trial court's award in section 2—1303 of the Code of Civil Procedure (Code) (735 ILCS 5/2—1303 (West 2000)), which states in relevant part:

> "Judgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied ***. When judgment is entered upon any award, report[,] or verdict, interest shall be computed at the above rate, from the time when made or rendered to the time of entering judgment upon the same, and included in the judgment."

Our supreme court has also held, in construing section 2—1303, that

> "[u]nder the judgment interest statute, the date an award, report, or verdict is rendered is the date on which interest begins to accrue. If there is a delay between the rendering of the award, report, or verdict and entry of judgment thereon, interest shall be assessed from the date the award is made and included in the judgment when it is entered. From the date of that judgment forward, 'post[ ] judgment' interest applies until the judgment debtor tenders full payment along with any accrued interest." (Emphasis omitted.) *Il-*

*linois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.*, 157 Ill. 2d 282, 301, 626 N.E.2d 213, 223 (1993).

Neither party argued the applicability of section 2—1303, which addresses and resolves the contention of error. The trial court's decision, reflected in an 11-page written opinion dated April 21, 2003, was an "award, report, or verdict" within the meaning of the Code; thus, the trial court was correct in awarding interest from April 21, 2003. Plaintiffs did not cross-appeal. We affirm the trial court's judgment.

### E. Award of Attorney Fees

■ Finally, defendants argue the trial court erred in awarding two plaintiffs, David L. Kelley and Bruce M. Overstreet, attorney fees pursuant to the Attorney Fees Act (705 ILCS 225/0.01 through 1 (West 2000)). The trial court awarded these two plaintiffs $28,289.53 in attorney fees because the amounts awarded to them exceeded their presuit demand.

Section 1 of the Attorney Fees Act sets forth as follows:

"Whenever a[n] *** employee brings an action for wages earned and due and owing according to the terms of the employment, and establishes by the decision of the court or jury that the amount for which he or she has brought the action is justly due and owing, and that a demand was made in writing at least [three] days before the action was brought, for a sum not exceeding the amount so found due and owing, then the court shall allow to the plaintiff a reasonable attorney fee of not less than $10[.00], in addition to the amount found due and owing for wages, to be taxed as costs of the action." 705 ILCS 225/1 (West 2000).

The well-accepted rule in Illinois is that the Attorney Fees Act at issue must be considered in derogation of the common law and is therefore to be strictly construed. *Swanson v. Village of Lake in the Hills*, 233 Ill. App. 3d 58, 67, 598 N.E.2d 430, 436 (1992). The " 'statute must be complied with in every particular to entitle the plaintiff to recover attorney fees.' " *Swanson*, 233 Ill. App. 3d at 67, 598 N.E.2d at 436, quoting *Caruso v. Board of Trustees of the Public School Teachers' Pension & Retirement Fund*, 129 Ill. App. 3d 1083, 1087, 473 N.E.2d 417, 420 (1984).

On August 10, 1999, plaintiffs collaboratively sent a demand letter to Kowa and to Huston-Patterson. Attached to the letters were listings of the name, address, and amount claimed due for each plaintiff. Plaintiffs' complaint was filed January 26, 2000. Of the 35 plaintiffs' demands, only 2, David L. Kelley and Bruce M. Overstreet, were awarded more than they demanded.

Defendants argue that plaintiffs' demand letters were not sent to plaintiffs' employer. Because Kowa Printing was no longer in business

at the time the demand letters were sent, we find it was proper to demand payment from the sole shareholder, officer, and director of the former employer. Kowa Printing cannot claim it did not receive notice because the letters were sent to Kowa. Kowa was the owner and operator of the employer and the only one to whom demand would have been logical.

Strictly construing the statute requires affirming the trial court's award of attorney fees. Plaintiffs Kelley and Overstreet made a written demand directly to the employer at least three days prior to filing suit for a sum not exceeding the amount found due and owing. We find no error in the court's award.

### III. CONCLUSION

For the foregoing reasons, we affirm in part and reverse in part.

Affirmed in part and reversed in part.

COOK and McCULLOUGH, JJ., concur.